WHEELER ET AL VS. LADD ET AL.

1. TENANCY IN COMMON : *Deed for certain part of a tract of land.*
A deed for one-third of a tract of land describing the part convey-
ed so that a surveyor could designate it does not make the gran-
tee a tenant in common with the grantor.

2. STATUTE OF LIMITATIONS : *Tacking possessions.*
A purchaser of land from one in possession as trustee or tenant of
the owner, can not connect the latter's possession with his own
in order to make up the statute period of limitations, unless such
possession of the tenant or trustee be also adverse.

3. TITLE : *Evidence of. Death of ancestor in possession.*
The possession of the ancestor at the time of his death under color
of title is sufficient evidence of title to support ejectment by the
heir against any one who obtains possession and can show no
better title.

4. EJECTMENT :
When only part of the plaintiffs in an action of ejectment are pre-
cluded from recovery only by the statute of limitations, the oth-
ers not barred (e. g. infants or *femmes covert)* are entitled to
judgment for their proportional part of the land and damages.

APPEAL from *Independence* Circuit Court.

Hon. R. H. POWELL, Circuit Judge.

*H. S. Coleman,* for Appellants.

1.   Wheeler and Foster being tenants in common, the
heirs of Wheeler became tenants in common with Foster
after Wheeler's death, and no act or claim of ownership
by Foster or those claiming under him could destroy
that relation, as to those of the appellants who were
minors.   17 *Ark.,* 608 ; 20 *Ib.* 359 ; *Ib.* 547 ; 23 *Ib.* 325,
336 ; 31 *Ib.* 345.

2.   Appellants claim as *heirs* of Wheeler, who died in
possession.   Proof of such actual possession, under claim
and color of title, was sufficient, until a better title was
shown.   *Adams on Eject., sec.* 281 ; 21 *Ark.,* 62 ; 31 *Ark.,*
334,

Wheeler et al v. Ladd et al.

3. The plea of limitations can not bar or effect the the rights of minors. *Gantt's Dig., sec.,* 4116. The principle that "proof of possession and claim of ownership raises a presumption of title" on1y applies to *plaintiffs,* who sue as heirs or administrators. *See supra.*

4. Minor plaintiffs ought not to have been required to prove an absolute "legal title" in themselves "superior" to all the world. Their ancestor died in actual possession under claim of ownership. This established a *prima facie* title sufficient to put the burden of proof upon defendants to show in themselves a better title. 31 *Ark.,* 336. They could not be required to trace their title beyond their ancestor, for the defendants do not show a "better title." They claim from the same source.

5. The possession of Stone, Chapman and the Wheelers was one continuous and unbroken possession, and ripened into a title under the Statute of Limitations. 23 *Ark.,* 336.

*Butler & Neill,* for Appellees.

1. There was no tenancy in common. Wheeler deeded to Foster a certain well defined part of the land, not an undivided third.

2. The period of the war should have been excluded in computing the time of possession of the Wheelers. 28 *Ark.,* 500-506.

3. Plaintiffs claim by *color of title* in their ancestor ripened by adverse possession. The possession of the widow cannot be tacked to the possession of the husband, but if it were, seven years have not elapsed counting out the war period. See 3 *Wash., Real Prop., p.* 145 *and note* 1.

Appellants fail to show *prima facie* legal title even; either by deed or adverse possession.

Argue elaborately on the testimony.

EAKIN, J. Plaintiffs, who are children and heirs of

Vincent Wheeler, brought ejectment against Ladd to recover two-thirds of a tract of land. They allege and show, that their father in 1859, bought the land from Wm. H. Stone and entered into possession; that he paid for it the sum of $2,500, and on the 25th of November, 1862, received a deed, which they file with their complaint. This deed describes the land as the "East half of the North quarter of Section 27, and all of that part of the North West fr. ¼ of section 26 lying South of the ditch," all in T. 12 N. R. 5 West, containing 220 acres.

From clerical omission perhaps, this description is imperfect; but there is no question on that; and it, otherwise, very clearly appears, that the East half of the North *East* quarter is intended. At the same time the said Vincent, for a third of the consideration, conveyed a third of the land to Jacob Foster, describing it as follows: "One-third of the E. ½ of the N. E. ¼ of section 27, and all of that part of the N. W. fr. ¼ of sec. 26 lying south of the ditch, containing 73⅓ acres, more or less, in T. 12 N. R. 5 W., said ⅓ to be taken off the South side of said tract of land, and to run parallel with the Southern boundary line." It is evident from the number of acres, that the intention was to convey a third of the whole tract, and not a third of that in section 27 with all of that in section 26. It may be said here, once for all, in passing, that this made no tenancy in common. A surveyor might run off the third conveyed by metes and bounds.

They further allege that their father remained in possession until his death, about the year 1866, that their mother, with some of the children, continued the possession until about the year 1870; that in 1875 the Executors of Foster, who had died, sold his interest under orders of the Probate Court, and on the 8th of February, 1876, conveyed to Ladd, the assignee of the purchaser,

1. Tenant in common.

Wheeler et al v. Ladd et al.

who took possession of the whole tract and still claims it, to their exclusion. They rely upon the purchase and possession by the father, and seven years adverse possession, ripening into title.

An amendment to the complaint sets forth that previous to the father's purchase the lands were occupied by Dr. Chapman, with his family, who died about 1856, intestate; that the children sold the land to Stone and Reed, and removed to California, and have since made no claim to it, and that Stone was in possession, claiming to be the owner when he sold to their father. Four of the plaintiffs were minors within three years before suit.

Ladd answers, and relies upon his purchase from the bidders at the Executor's sale (or their assignees), which, as to the part in 27, he says was about the 1st of July, 1875, and upon his continued possession since—receiving his deed from the Executors on the 8th of February following. As to the portion in section 26 he says he purchased a portion of it from a bidder at the Executor's sale, and went into immediate possession on the 4th of Jan., 1875. Another portion he purchased from another purchaser at said sale in November, 1876. A part of section 26 had been assigned to the widow of Foster as dower.

He sets up title in Chapman at the time of Vincent Wheeler's purchase from Stone, and pleads the Statute of Limitations of five and seven years.

The issues were submitted to a jury, which found for defendants. After a motion for a new trial had been overruled plaintiffs appealed.

It is convenient to consider first, whether the verdict was against the law and evidence.

1st. As to the plaintiffs title under the statute of limitations. No other title was shown in Chapman or Stone, the vendor of the ancestor. The proof shows that

2. STATUTE OF LIMITATION: Tacking possessions.

Chapman died about '56, and that his family left for California. Stone, a son-in-law, was left in possession of the place, and assumed the power to sell it. But it does not appear that he held adversely. There is evidence to show that when Wheeler purchased, he was aware that the land belonged to Chapman's heirs, and trusted that they would affirm the sale. With this knowledge, or whether he knew it or not, he cannot connect his adverse holding after his purchase, with the possession of Stone as trustee, or tenant under the heirs, before, so as to make such seven year's possession as would give title. It would be otherwise if it had been shown that Stone had himself held as owner. But the proof on this point is not sufficiently clear. From the year 1859 'till about the years 1868 or '69, when the last of the Wheeler family left the lands, seven years had not elapsed, under the statute. The war period, from the 6th of May, 1861 to the 2d of April, 1866, must be excluded.

3. TITLE :
Possesion
of ancestor
at time of
death as
evidence of. Plaintiffs showed no other right to possession of the land, than such as resulted from the fact that the ancestor had colour of title and died in possession, claiming the land as his own. This, like the old descent cast at common law, which gave such apparent right of possession as to toll the right of entry of a disseizee, although that is now changed by statute, is still sufficient to protect the heir in the continuous enjoyment of the possession, against any and everybody, who cannot show a better title, and may support an action of ejectment. This Court has expressly recognized this in *Jacks v. Dyer, et al.*, 31 *Ark.*, 334. The *prima facie* case of plaintiffs was in this view established, and it devolved upon defendant to show a better title.

His whole documentary evidence of title was through the sales made in 1875, and the deeds of 1876, from the

Wheeler et at v. Ladd et al.

executors of Foster. The latter had none beyond this third part, and although there is oral proof that he ·had bought the interests of Chapman's heirs in his lifetime, that must be disregarded, under the statute of frauds. At law, title to real estate can only be shown by written instrument, or oral proof of descent, or seven years possession, to which may be added, in equity, oral contracts with part performance, and other cases of implied trusts.

After the death of Wheeler's widow, the date of which is uncertain, but which was certainly before 1870, Foster took possession of the whole tract, and from that time on, till his death, claimed it as his own. The adverse nature of his possession is clearly shown by evidence The oral proof, whilst incompetent to show any title in him, may explain his motives. He repudiated the title and right of the Wheelers, and desired to fortify his possession under the Chapmans. This adverse possession may connect with the possession of his executors, and of purchasers from them, and in. 1880 having ripened into a title, showed a better right in defendant than the *prima facie* right of plaintiffs'.

But not as to all of them. Four of Wheeler's children 4. EJECTMENT: Recovery by part of plaintiffs. were minors, within three years before, or at the time of beginning the suit. Another was covert, when Foster first took possession. As to these, they are not affected in any way by the statute of limitations. Their disabilities protect them entirely, and they may stand upon their *prima facie* right for their proportionate shares of the property which came to them by descent, with colour of title. The title of defendant by adverse possession could not, as to them, become a "better title" until their disabilities were removed, so that it might operate against them. Under the evidence as presented by this trans-

8

script the jury should have found for the minors and the feme covert, who were, or had been so, up to within three years for their respective parts, with proportionate damages.

It is not important to consider of objections to instructions. The court properly refused to give one asked by plaintiffs on the hypothesis, that Wheeler and Foster were tenants in common. They were not. As for the rest, the instructions were mainly fair, and stated the law, except that they were calculated to make the impression that the seven year's possession of defendants would defeat the *prima facie* right of the plaintiffs under disabilities. In so far they were erroneous.

The widow of Foster, and Crow, a claimant of a small portion of the land, were made defendants, and did not answer. They will be amenable to the final judgment if their claims conflict with the right of any of the plaintiffs, who may recover for a proportionate part of the portion of the tract which Wheeler reserved in his conveyance to Foster, and which seems to have been considered by them as two-thirds in value of the whole.

For error in overruling the motion for a new trial reverse the judgment, and remand with usual directions.